STATE of North Dakota, Plaintiff and Respondent,

v.

Robert J. ANDERSON, Defendant and Appellant.

Cr. No. 376.

Supreme Court of North Dakota.

Nov. 28, 1969.

———————

Sproul, Fitzner, Lenaburg & Fitzner, Valley City, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Leo J. Beauclair, State's Atty., Valley City, for plaintiff and respondent.

TEIGEN, Chief Justice.

The defendant has appealed from a final judgment of conviction entered on a jury verdict for attempted burglary, and from an order denying his motion for a new trial.

The defendant has specified as error that the verdict is contrary to law and against the evidence. He argues in support of his specifications that the testimony of the accomplices was admitted without suffcient corroboration to satisfy the requirements of Section 29–21–14, North Dakota Century Code, and that there was no evidence received to establish two elements of the crime of attempted burglary —namely, intent and an overt act.

The State produced two witnesses who testified that, on the night in question, they, along with the defendant and a fourth person named George Tollers, were riding around Valley City in a car, drinking beer, and that the conversation turned to money and it was agreed they would burglarize the Farmers Union building in Valley City. By agreement, the car was parked about one and one-half blocks from the building and the defendant, one of the State's witnesses, and Tollers proceeded on foot to the building. The second State's witness stayed in the car. It was after midnight. The three young men walked around the building and stopped at the back of it. The defendant and Tollers approached the building and the defendant held a rain pipe while Tollers climbed onto the roof of the building, apparently using the rain pipe to assist in his ascent. The rain pipe broke and the defendant carried the broken pipe back to where the State's witness was standing and watching. He laid it beside a truck which was parked there. The State's witness then saw the lights of an approaching automobile. He became scared, pointed the lights out to the defendant, and then ran to where the car had been parked with the second State's witness waiting in it. He told him what he had seen and they drove away. The two State's witnesses drove around town for awhile and then drove to the defendant's home. They found him in the vicinity and the three drove around until their car ran out of gasoline near the Farmers Union building, where they were apprehended by the police, taken into custody, and interrogated.

A police officer testified that, at about 1:45 a. m. while he was on patrol, he was driving past the Farmers Union building and noticed the front door was partly open. He stopped to investigate and entered the building. He discovered broken glass from a skylight overhead on the floor. He also heard a noise which sounded like footsteps of someone running on the roof. At this time he was joined by another policeman at the door and both ran outside to try to prevent the person suspected of being on the roof from getting away. When they were outside the building, the policeman testifying saw a man running on Main Street about a block south of the Farmers Union building. He testified that, from his general appearance and the way he ran, he "thought it may have been the defendant." He also testified that he was familiar with the defendant and that he had, on occasions, chased him and was somewhat

familiar with his run and gait. On cross-examination the policeman admitted his identification of the defendant was a suspicion. On cross-examination it was also disclosed that, at the same time, Tollers, who had climbed onto the roof, was found and apprehended by the policemen in a fenced enclosure, built up against the wall of the building, in which bottle gas was kept.

The first question to be answered is whether there was sufficient corroboration by other evidence to allow a conviction on the testimony of the State's witnesses. The testimony of the two State's witnesses clearly establishes that they were accomplices if, in fact and law, there was an attempt to commit burglary by all or any member of the group.

"An accomplice is one who knowingly, and with criminal intent, participates, associates, or concurs with another in the commission of a crime.

\* \* \* \* \* \*

"Where circumstances show a common plan of several persons to do an unlawful act, to which all assent, whatever is done in furtherance of the original design is the act of all. Each one need not take an active part in the commission of the crime to make him guilty of it." State v. Helmenstein, 163 N.W.2d 85 (N.D.1968).

"A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." Section 29–21-14, N.D.C.C.

This court has held that testimony of an accomplice does not warrant a conviction unless it is corroborated by other evidence to connect the defendant with the offense. State v. Todd, 62 N.D. 479, 244 N.W. 25 (1932). However, every ma-

terial fact testified to by an accomplice need not be corroborated. It need not be sufficient, in itself, to warrant a conviction or establish a prima facie case. All that is required is that the evidence corroborates the accomplice as to some material fact, or facts, and tends to connect the defendant with the commission of the offense. State v. Foster, 69 N.D. 428, 287 N.W. 517 (1939); State v. Pusch, 77 N.D. 860, 46 N.W.2d 508 (1950). Corroboration may be furnished by facts and circumstances which tend to connect the defendant with the commission of the crime. State v. Foster, *supra*; State v. Marmon, 154 N.W.2d 55 (N.D.1967). The weight of the corroborating evidence is for the jury. It is only when there is no corroborating evidence of the nature required that this court may reverse a judgment based upon the verdict of guilty. State v. Foster, *supra*.

In reviewing the record we find that the evidence tending to connect the defendant with the crime, independent of the testimony of the accomplices, consists of the testimony of the policeman who, out on patrol, discovered the door of the building was ajar and stopped to investigate. He testified as to his observations as he was leaving the building as follows:

"At this time I saw a party, a subject running on Main Street about a block south of the Farmers Union."

He stated that he could not positively identify the defendant, but testified:

"Well, just from the general appearance and the way the party ran, I thought it may have been the Defendant."

The answers to the following questions established the policeman's familiarity with the defendant:

"Q And have you had occasions to chase him before?

"A Yes, sir. I did.

"Q You are somewhat familiar with his run, his gait?

"A Yes, sir."

He said to the other policeman at the scene that he thought it was Anderson, and later, about 3 a. m., the other policeman apprehended the defendant and the two State's witnesses in their stalled car near the Farmers Union building. It was also brought out on cross-examination of this witness that Tollers, who was also implicated by the two State's witnesses, was apprehended by this policeman in a fenced-in area fastened to the south side of the Farmers Union building. This apprehension was contemporaneous with the initial investigation.

The fact that the defendant was arrested in the company of the accomplices at about 3 a. m. near the scene of the attempted burglary, is an independent fact tending to connect the defendant to the crime. Other jurisdictions have found that, under certain circumstances, evidence that the defendant was in the company of accomplices or present at or near the place of the crime shortly before or after the crime was committed, may be sufficient corroboration that tends to connect the defendant with the commission of the crime. State v. Rasmussen, 241 Minn. 310, 63 N.W.2d 1; State v. Stave, 280 Minn. 269, 158 N.W.2d 848; People v. Brown, 30 A.D.2d 279, 291 N.Y.S.2d 573; Bird v. State (Tex.Cr.App.), 423 S.W.2d 919.

■ However, the state is not called upon to point to some single or isolated fact which, in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence, furnished by non-accomplice witnesses, which supplies the test. State v. Pusch, *supra*.

■ We cannot say, as a matter of law, that there is no corroborating evidence which tends to connect the defendant with the commission of the offense. We think it is substantial. The determination

of the sufficiency of the corroborating evidence is for the jury. The court's instructions to the jury were clear in regard to the corroboration required under Section 29–21–14, N.D.C.C. We find, when all the corroborating evidence is considered, it tends to connect the defendant with the commission of the crime and is sufficient to satisfy the requirements of the statute, and the jury could find the defendant was in company with the State's witnesses and Tollers at the time and place of the attempted burglary.

Next, the defendant argues that the court erred in denying his motion for a new trial because the State failed to prove the two elements of an attempt to commit a crime, to-wit: intent and an overt act.

An attempt to commit a crime is defined by our statute as:

"An act done with intent to commit a crime and tending but failing to effect its commission, * * *." Section 12–04–01, N.D.C.C.

The defendant is charged with the crime of attempted burglary. Burglary is defined as:

"Any person who:

\* \* \* \* \* \*

"9. Breaks into and enters at any time any building or any part of a building, booth, tent, railroad car, motor vehicle or trailer, vessel, or other structure or erection in which any property is kept, with intent to steal or to commit a felony,

is guilty of burglary * * *." Section 12–35–02(9), N.D.C.C.

■ In order to sustain a conviction there must have been a specific intent to break into and enter the building with the intent to steal or commit a felony, and a direct and ineffectual act toward its commission.

"An allegation of attempt to commit a crime implies two things, an intent and

an overt act which tends directly toward but falls short of actual commission." State v. Maresch, 75 N.D. 229, 27 N.W. 2d 1.

■ A motion for a new trial on the ground of insufficiency of the evidence is addressed to the trial court's sound discretion. State v. Smith (N.D.), 153 N.W.2d 691; State v. Loyland (N.D.), 149 N.W.2d 713; State v. Little Bear (N.D.), 130 N.W.2d 83.

In passing upon a motion for a new trial based on the insufficiency of the evidence, the trial court is clothed with a wide discretion, and its determination in respect to such insufficiency will not be disturbed on appeal unless there has been an abuse of the discretion. State v. Smith, *supra*; State v. Loyland, *supra*; State v. Little Bear, *supra*.

The burden is on the movant to point out to the trial court wherein the evidence is insufficient and, unless it is shown that the evidence is insufficient to sustain the verdict, this court will not interfere with the decision of the trial court. State v. Smith, *supra*; State v. Graber, 77 N.D. 645, 44 N.W.2d 798.

■ It is not an abuse of discretion on the part of the trial court to deny a motion for a new trial on the ground of insufficiency of the evidence where there is substantial evidence to support the verdict. State v. Smith, *supra*; State v. Ramstad (N.D.), 87 N.W.2d 736; State v. Jager (N.D.), 91 N.W.2d 337.

Section 12–02–04, N.D.C.C., provides:

"All persons concerned in the commission of a crime, * * * whether they directly commit the act constituting the offense or aid and abet in its commission, or not being present, have advised and encouraged its commission, * * * are principals in any crime so committed."

In Helmenstein, *supra,* we held:

"Every person who is concerned in the commission of an offense, whether he directly commits the act or procures, counsels, or aids and abets in its commission, is guilty as a principal";

and that he need not take an active part in the commission of the crime to make him guilty of it.

■ The evidence in this case establishes that all four young men, including the defendant, agreed to burglarize the Farmers Union building. The defendant accompanied Tollers and one State's witness to the back of the building. The defendant held a rain pipe while Tollers climbed onto the roof of the building. A short time later a policeman arrived at the front of the building. He found a door ajar and entered. On the floor he found broken glass from the skylight above. He heard footsteps of someone running on the roof. He went outside and found and apprehended Tollers, who had climbed onto the roof, in a fenced enclosure adjacent to the building. The defendant and the two State's witnesses were apprehended a short time later in their stalled car a short distance from the Farmers Union building. These circumstances were sufficient to show a common plan of all four persons to do an unlawful act which had been agreed upon by all, and in which the defendant aided and abetted. However, they were frustrated in their efforts by the arrival of the policeman, which caused the defendant and the other participants to flee. Thus they failed to effect the commission of the planned crime. Based on this evidence, the jury could conclude the skylight was broken by Tollers while on the roof for the purpose of entering the building with the intent to steal. This was an overt act tending directly toward committing burglary and, for this act, the defendant can also be held accountable as a principal. We find there is substantial evidence to support the verdict and that the trial court did not abuse its discretion in denying the mo-

tion for a new trial. The judgment and the order denying new trial are affirmed.

STRUTZ, ERICKSTAD, and KNUDSON, JJ., and ADAM GEFREH, District Judge, concur.

Mr. Justice WM. L. PAULSON, deeming himself disqualified, did not participate; the Honorable ADAM GEFREH, one of the judges of the Third Judicial District, sitting in his stead.